J-S54032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAHMEL NMN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 255 WDA 2017 |

Appeal from the Judgment of Sentence January 19, 2017
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001289-2016

BEFORE: OTT, MOULTON, and FITZGERALD, JJ.[*]

MEMORANDUM BY FITZGERALD, J.: **FILED SEPTEMBER 21, 2017**

Appellant, Rahmel NMN Williams, appeals from his judgment of sentence of thirteen years and three months to thirty-one years' imprisonment for kidnapping,[1] simple assault,[2] reckless burning[3] and tampering with physical evidence.[4] Appellant contends, *inter alia*, that the evidence was insufficient to sustain his conviction for kidnapping, and the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2901(a)(3).

[2] 18 Pa.C.S. § 2701(a)(1).

[3] 18 Pa.C.S. § 3301(d)(2).

[4] 18 Pa.C.S. § 4910(1).

trial court abused its discretion in admitting into evidence two photographs of the victim's genital area taken after the assault. We affirm.

The factual and procedural history of this case is as follows. On the evening of June 4, 2016, J.L. arrived at a bar to celebrate a friend's birthday. N.T., 1/9/17, at 23.[5] After midnight, J.L. left the bar with Appellant, whom she met that night. *Id.* at 24-25. J.L. purchased condoms at a nearby convenience store, and she and Appellant left the store in his car. *Id.* at 27-28. J.L. asked Appellant to drop her off on the road she resided on, but Appellant traveled in the opposite direction for approximately one mile and pulled over to a remote area of the road. *Id.* at 33-35. J.L. attempted to exit the car, but Appellant punched her in the face and threatened to shoot her if she attempted to escape. *Id.* at 36. J.L. testified that Appellant pinned her down, mounted her and had her put a condom on him. *Id.* at 37-38. J.L. stated that Appellant had sex with her without her consent, bit her on her arm and shoulder, strangled her, and inserted a hard metal object into her rectum. *Id.* at 38-40.

Appellant finally allowed J.L. to leave when he noticed blood on the car seat. *Id.* at 42. J.L. left the car and called her boyfriend, who picked her up. *Id.* at 47. Several hours later, J.L. went to the hospital. *Id.* Later that day, she underwent emergency surgery. *Id.* at 49-50. The operating

---

[5] The transcript of the three-day trial is in one volume with consecutively numbered pages.

- 2 -

physician, Dr. Elias, testified that he performed a colostomy on J.L., and that she had impalement injuries of the rectum and significant bruising at the lower portion of the rectum and buttocks. *Id.* at 197-201.

Appellant testified and admitted meeting J.L. at the bar and driving her to the gas station. *Id.* at 316-18. He admitted having sexual intercourse with J.L. but claimed it was consensual. *Id.* at 319. He admitted hitting J.L. in her face up to five times but said it was because he thought she stole his money. *Id.* at 321-23.

On June 5, 2016, Appellant learned that the police were looking for him. *Id.* at 326. On June 6, 2016, he set his car on fire. *Id.* at 327. The police officers who responded to the fire searched the car and found the clothes Appellant wore on the night of his encounter with J.L. as well as a lug wrench, the hard metal object that they believed he used on J.L. *Id.* at 262-70. Appellant burned his leg while setting fire to the car, and he later checked into the hospital under a false name, Randall Means. *Id.* at 329-30, 336-37.

The jury found Appellant guilty of kidnapping, simple assault, reckless burning, and tampering with physical evidence but not guilty of aggravated assault, rape by forcible compulsion and involuntary deviate sexual intercourse by forcible compulsion. *Id.* at 384-87. Following sentencing, Appellant filed a timely post-sentence motion challenging the length of his sentence, which the court denied. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this timely appeal, Appellant raises the following issues for review:

I. Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant unlawfully removed the victim a substantial distance or confined the victim for a substantial period of time in a place of isolation so as to sustain a conviction [for] kidnapping, 18 Pa.C.S.[] § 2901(a)(3)?

II. Did the trial court abuse its discretion in admitting as evidence two (2) photographs of the victim's genitalia area that were taken following the alleged assault?

III. Did the sentencing court err in sentencing Appellant on the crime of simple assault to a consecutive period of incarceration to the crime of kidnapping, as the two (2) crimes merged for sentencing purposes?

IV. Did the sentencing court abuse its discretion by imposing a harsh, severe, and manifestly unreasonable and excessive sentence by sentencing Appellant to the maximum sentence allowable by law for each offense and by running each offense in a consecutive order?

Appellant's Brief at 8.

In his first issue, Appellant argues that the evidence was insufficient to sustain his kidnapping conviction, because the Commonwealth failed to establish that he unlawfully removed the victim a substantial distance or confined her for a substantial period of time in a place of isolation. No relief is due.

When reviewing a challenge to the sufficiency of the evidence,

[t]he standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the

- 4 -

fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015),

*appeal denied*, 138 A.3d 4 (Pa. 2016) (citation omitted).

The kidnapping statute provides in relevant part:

[A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions . . .

(3) To inflict bodily injury on or to terrorize the victim or another.

18 Pa.C.S. § 2901(a)(3).

For purposes of the kidnapping statute, a substantial distance is not limited to a defined linear distance or a certain time period. *See Commonwealth v. Hughes*, [] 399 A.2d 694, 696 ([Pa. Super.] 1979). The determination of whether the victim was moved a substantial distance is evaluated "under the circumstances" of the incident. *See Commonwealth v. Chester*, [] 587 A.2d 1367, 1382 ([Pa.] 1991), *cert. denied*, 502 U.S. 959 [] (1991). Further, "the guilt of an abductor cannot depend upon the fortuity of the distance

- 5 -

he has transported his victim nor the length of time elapsed . . . ." *Hughes*, 399 A.2d at 696.

*Commonwealth v. Malloy*, 856 A.2d 767, 779 (Pa. 2004).

Here, Appellant moved J.L. to an isolated area approximately one mile from where she asked Appellant to drop her off. We consider this to be a "substantial distance" under the circumstances of this case. *See Hughes*, 399 A.2d at 698 (where defendant removed victim two miles to isolated area, beyond reach of friends or police, "two miles is a substantial enough distance to place the victim in a completely different environmental setting removed from the security of familiar surroundings"). In addition, the evidence was sufficient to prove that Appellant removed J.L. to a place of isolation. For purposes of the kidnapping statute, a place of isolation is "not geographic isolation, but rather effective isolation from the usual protections of society." *Commonwealth v. Jenkins*, 687 A.2d 836, 838 (Pa. Super. 1996) (citation omitted). A location can constitute a place of isolation "if detention is under circumstances which make discovery or rescue unlikely." *Id.* (citation and emphasis omitted) (defendant's actions created "place of isolation" within victim's home for purposes of kidnapping statute, even though police arrived approximately twenty minutes after incident began and surrounded home; no one was able to reach victims for five hours, fate of victims was exclusively within defendant's control until he surrendered, seventy-year-old victim was immobilized on floor from shoulder injury, and four-year-old victim was carried around by defendant at knifepoint).

Further, J.L. voluntarily entered the car at the bar and again at the gas station, but instead of dropping her off where she requested, Appellant drove to a secluded area off the road in early morning hours, where J.L. was beyond the aid of friends or the police, punched J.L. in the face when she attempted to exit the car, and threatened to shoot her if she attempted to escape. Because Appellant effectively isolated J.L. from rescue or the usual protections of society, Appellant created a "place of isolation" at the roadside. Therefore, Appellant's challenge to the sufficiency of the evidence is without merit.

In his second issue, Appellant argues that the trial court abused its discretion in admitting into evidence two photographs of the victim's genitalia taken following the assault. Appellant argues that the photographs were irrelevant and prejudicial. We disagree.

In a challenge to a trial court's evidentiary ruling, our standard of review is one of deference:

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Hernandez***, 39 A.3d 406, 411 (Pa. Super. 2012) (citation omitted). When the evidence is graphic in nature, the court must engage in an additional analysis:

First a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Tharp*, 830 A.2d 519, 531 (Pa. 2003) (citation omitted).

The trial court found the photographs inflammatory but determined that they were of essential evidentiary value. Trial Ct. Op., 4/17/17, at 9. The court observed:

[T]he Commonwealth used the photographs in an attempt to establish certain elements of the crimes charged. The images of [J.L.'s] injuries were probative of several of the crimes, specifically the aggravated assault charge, since they could have been used to establish the necessary intent and the serious bodily injury elements of that crime. *See Commonwealth v. Small*, [] 741 A.2d 666, 680 [(Pa. 1999)] (photographs of murder victim's decomposed body were probative of the attempted rape and first degree murder convictions since they helped to establish the necessary intent element of the crimes). Moreover, the photographs were not merely cumulative of Dr. Elias' expert testimony because the photographs were useful in aiding the jury to understand [his] detailed medical testimony . . . As our Supreme Court has held, an expert witness's testimony conveyed to the jury, in clinical terms, the nature of a victim's injuries does not render photograph evidence merely duplicative because the meaning of the words can be usefully illustrated through photographic images. *Commonwealth v. Pruitt*, [] 951 A.2d 307, 319 ([Pa.] 2008). Finally, this Court took a number of precautionary steps, such as limiting the number of photographs the Commonwealth was permitted to admit, limiting the jurors' exposure to the photographs by giving them only one opportunity to review them[,] and

providing the jury with cautionary instructions on two separate occasions, immediately prior to the jurors reviewing the photographs and during the Court's jury instructions at the end of trial and prior to jury deliberations.

Trial Ct. Op. at 9-10. Based on this reasoning, we conclude that the trial court acted within its discretion by admitting the photographs into evidence. Furthermore, the verdict demonstrates that the photographs did not prejudice the jury: the jury acquitted Appellant of aggravated assault, rape and involuntary deviate sexual intercourse, three felony charges to which the photographs directly related.

In his third issue, Appellant argues that the trial court erred in failing to merge his simple assault and kidnapping convictions for sentencing purposes. No relief is due.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and [our] scope of review is plenary." **Commonwealth v. Nero**, 58 A.3d 802, 806 (Pa. Super. 2012) (citation omitted).

The merger statute states:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Merger is proper only when both elements in this provision are met. **See Commonwealth v. Wade**, 33 A.3d 108, 116 (Pa.

Super. 2011). In this case, Appellant's crimes did not arise from a single criminal act; he committed multiple distinct criminal acts.

> When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. Th[e] issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, [and if so,] then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Commonwealth v. Pettersen*, 49 A.3d 903, 912 (Pa. Super. 2012) (citation and quotation marks omitted). In *Pettersen*, the trial court sentenced the defendant to, *inter alia*, consecutive terms of imprisonment on three counts of aggravated assault after he broke into the victim's residence, struck her in the head with a hammer, stabbed her ten times and placed a bag over her head and attempted to suffocate her. *Id.* at 906-07. This Court rejected the defendant's argument that the aggravated assault charges merged for sentencing purposes:

> Although the time between the separate acts was relatively short, the three assaults were committed with different weapons and caused distinct injuries to different parts of the victim's body. When Appellant struck the victim in the back of the head with a hammer, he committed an aggravated assault. When Appellant stabbed the victim multiple times in the chest and back, he committed at least one aggravated assault. And Appellant committed an aggravated assault when he attempted to suffocate the victim by placing a plastic bag over her head.
>
> Appellant is not entitled to a volume discount for these crimes simply because he managed to accomplish all the acts within a relatively short period of time.

*Id.* at 912. Similarly, Appellant committed separate crimes of kidnapping and simple assault against J.L. He committed the crime of kidnapping when he punched J.L. in the face as she attempted to exit the vehicle. At another point, he committed simple assault by strangling J.L. and biting her in the arm and shoulder. *See* 18 Pa.C.S. § 2701(a)(1) (defendant is guilty of simple assault if he "attempts to cause or intentionally . . . causes bodily injury to another"). The fact that he committed these crimes within a relatively short period of time did not cause them to merge for sentencing purposes. *See Pettersen*, 49 A.3d at 912.

In his fourth and final issue, Appellant contends that his sentence was excessive because he received the maximum sentence for each offense and the trial court ran each sentence consecutively. We disagree.

Kidnapping, a first degree felony, carries a maximum sentence of twenty years' imprisonment. *See* 18 Pa.C.S. §§ 1103(1), 2901(b)(1). Appellant's prior record is that of a repeat felon, and the offense gravity score ("OGS") for kidnapping is ten, yielding a standard range sentence of seventy-two to eighty-four months and an aggravated range sentence of ninety-six months. The court sentenced Appellant to ninety-six months' to twenty years' imprisonment, an aggravated range minimum sentence within the statutory maximum.

Reckless burning or exploding, a third degree felony, carries a maximum sentence of seven years' imprisonment. *See* 18 Pa.C.S. §§

1103(3), 3301(d)(1). The OGS for this offense is five, yielding a standard range sentence of twenty-four to thirty-six months and an aggravated range sentence of thirty-nine months. The court sentenced Appellant to thirty-nine months' to seven years' imprisonment, an aggravated range sentence with the maximum tail allowed by law.

Tampering with evidence, a second degree misdemeanor, carries a maximum sentence of two years' imprisonment. *See* 18 Pa.C.S. §§ 1104(2), 4910(1). The OGS for this offense is two, yielding a standard range sentence of six to twelve months and an aggravated range sentence of fifteen months. The court sentenced Appellant to one to two years' imprisonment, the maximum sentence allowed by law.

Simple assault, a second degree misdemeanor, carries a maximum sentence of two years' imprisonment. *See* 18 Pa.C.S. §§ 1104(2), 2701(a)(1). The OGS for this offense is three, yielding a standard range sentence of twelve to eighteen months and an aggravated range sentence of twenty-one months. The court sentenced Appellant to one to two years' imprisonment, the maximum sentence allowed by law.

Appellant argues that the trial court abused its discretion by imposing consecutive sentences that amounted to a virtual life sentence. Appellant's Brief at 27. The court, Appellant claims, intended to punish him for crimes of which he was acquitted (aggravated assault, rape and involuntary deviate sexual intercourse). *Id.*

This Court has stated that:

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. Prior to reaching the merits of a discretionary sentencing issue:
>
>> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

*Commonwealth v. Evans*, 901 A.2d 528, 533-34 (Pa. Super. 2006)

(quotation marks and some citations omitted).

The Rule 2119(f) statement

> must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (e.g., the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm . . . .

*Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*).   "Our inquiry must focus on the **reasons** for which the appeal is

sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** (emphasis in original).

Here, Appellant timely appealed, preserved his discretionary aspects of sentencing issue in his motion for reconsideration of sentence, and included a Pa.R.A.P. 2119(f) statement in his brief. **See Evans**, 901 A.2d at 533. Appellant asserts the trial court imposed a manifestly excessive sentence because it imposed aggravated range sentences without adequately considering the factors set forth in 42 Pa.C.S. § 9721. This presents a substantial question. **See Commonwealth v. Fullin**, 892 A.2d 843, 847 (Pa. Super. 2006).

This Court has stated:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted).

> In reviewing the record the appellate court shall have regard for: (1) The nature and circumstances of the offense and the history and characteristics of the defendant. (2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation. (3) The findings upon which the sentence

was based. (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d)(1)-(4).

A sentence may be found to be unreasonable if it fails to properly account for these four statutory factors, or if it

> was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant.

*Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007).

Here, the court reviewed Appellant's presentence report, N.T., 1/19/17, at 7, and took into account all factors required under section 9721. The court stated in its opinion that it

> took into consideration a number of factors, including the nature and seriousness of the offenses. The jury found that Appellant kidnapped and assaulted [J.L.] and then subsequently burned the vehicle where the assault took place in an attempt to destroy evidence and ultimately cover up his crimes. First, Appellant's actions were violent, resulting in bodily injury to [J.L.]. Second, Appellant's actions were intentional, meaning it was his conscious object to both kidnap and assault [J.L.]. And third, by attempting to conceal his identity and destroy evidence, his actions indicate that not only did [he] know what he did was wrong, but that he also felt he did not need to face the consequences of his crimes.

> This Court also took into consideration a sentence that would best suit the rehabilitative efforts of Appellant. A careful review of the pre-sentence investigation report shows that Appellant's prior record included a long list of convictions dating back to 1996, including several serious felony convictions. As stated at the time of sentencing,

- 15 -

this indicated to the Court the failure of prior rehabilitative efforts. Therefore, it was incumbent upon this Court to provide Appellant with long term correctional treatment that will best lead to rehabilitating [him] throughout his sentence.

Trial Ct. Op. at 14. Based on this analysis, we conclude that Appellant's sentence was a proper exercise of the court's discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017